IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


GILBERT BRADY,

    Plaintiff,

 v.

PORTLAND STATE UNIVERSITY, MARGARET EVERETT, LESLIE B. HAMMER, CHARLOTTE FRITZ, ELLEN SKINNER, TODD BODNER, KRISTA BROCKWOOD, LIU-QIN YANG, LARRY MARTINEZ, JENNIFER DIMOFF, AND DOES 1 THROUGH 25,

    Defendants.

No. 3:18-cv-01251-HZ

OPINION & ORDER


David H. Griggs
Cameron Ramelli
GRIGGS LAW GROUP, P.C.
4900 SW Griffith Drive, Suite 165
Beaverton, Oregon, 97005

 Attorneys for Plaintiff

P.K. Runkles-Pearson
Taylor D. Richman
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204

    Attorneys for Defendants

HERNÁNDEZ, District Judge:

Plaintiff Gilbert Brady filed this action against Defendants Portland State University, Margaret Everett, Leslie B. Hammer, Charlotte Fritz, Ellen Skinner, Todd Bodner, Krista Brockwood, Liu-Qin Yang, Larry Martinez, Jennifer Dimoff, and DOES 1 through 25. Plaintiff brings claims under 42 U.S.C. § 1983 for violation of his due process rights; Title IX, 20 U.S.C. §§ 1681–1688; Or. Rev. Stat. ("ORS") § 659.852; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et. seq.; the Age Discrimination Act of 1975, 42 U.S.C. § 6101, et. seq.; and for breach of contract. Defendants Everett, Hammer, Fritz, Skinner, Bodner, Brockwood, Yang, Martinez, and Dimoff ("Defendants") move to dismiss this action for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[1] The Court grants Defendants' motion.

## BACKGROUND

In 2011, Plaintiff began working for Defendant Hammer, a professor at Portland State University ("PSU"), as a post-baccalaureate research assistant in her lab. First Am. Compl. ("FAC"). ¶ 16, ECF 3. At the time, Defendant Hammer was seeking a Department of Defense funded grant to study veteran reintegration into work and family life after 9/11. *Id.* Plaintiff ultimately assisted Defendant Hammer in writing her grant application over the spring and summer of 2011. *Id.* at ¶ 18. He continued to work and volunteer with Defendant Hammer

---

[1] Defendant Portland State University filed an Answer on November 5, 2018, and does not join in this motion to dismiss. Accordingly, "Defendants" as used throughout this Opinion does not include Defendant Portland State University.

through 2013. *Id.* at ¶ 20. During this time, he also took post-baccalaureate classes at PSU, continued to drill part-time with the Oregon Army National Guard, and worked as a full-time psychology technician at the Portland Veteran's Affairs Medical Center. *Id.* at ¶¶ 18–19, 21.

Plaintiff alleges that he and Defendant Hammer "developed a mutual interest in Plaintiff applying to [PSU's Applied Psychology Program] and continuing in Hammer's lab as a doctoral student in [Industrial/Organizational ("I/O")] Psychology." *Id*. at ¶ 20. Plaintiff applied to the Applied Psychology Program at PSU for the fall 2013 term. *Id.* at ¶ 24. In April of 2013, Defendant Skinner, chair of the Psychology Department, informed Plaintiff that he had been accepted to the program to study I/O Psychology and would be advised by Defendant Hammer. *Id.* at ¶ 27.

In the meantime, Defendant Hammer secured a $5 million grant funded by the Department of Defense. *Id.* at ¶ 25. The funding was for her "Study for Employment Retention of Veterans" or the "SERVe" project. *Id.* at ¶¶ 25–26. Plaintiff joined Defendant Hammer's lab in mid-September of 2013, just before the start of his first-year classes. *Id.* at ¶¶ 28–29. Plaintiff was a "contractually funded graduate research assistant . . . assigned to the SERVe grant with the [Applied Psychology] Program promising him" tuition remission contingent on his progress and funding availability. *Id.* at ¶ 29. But a few weeks later, Plaintiff was removed from the SERVe project and assigned to a teaching assistant position instead. *Id*. at ¶¶ 51, 76–77. Plaintiff also alleges that, during his second year in the program, Defendant Hammer used Plaintiff's PSU-based grant funding to hire a post-doctoral research assistant at Oregon Health and Science University, where Defendant Hammer held a joint appointment. *Id.* at ¶¶ 4, 80. Even though Plaintiff was removed from the project, Defendant Hammer is alleged to have continued to "exploit Plaintiff's labor for free on SERVe" despite Plaintiff's other demands. *Id.* at ¶ 86.

3- OPINION & ORDER

"Plaintiff succeeded academically throughout his first three years in the Program" and successfully defended his master's thesis in February of 2017. *Id.* at ¶ 39–40. Throughout this time, Defendant Hammer served as Plaintiff's main academic advisor and is alleged to have promised to continue to support Plaintiff. *Id.* at ¶ 41. She provided positive annual evaluations of Plaintiff and found Plaintiff was qualified to advance as a Ph.D. candidate along with the rest of his cohort as late as March of 2017. *Id.* at ¶ 42.

Plaintiff alleges, however, that he had problems working with Defendant Hammer during his time in the Applied Psychology Program. For example, Plaintiff alleges that Defendant Hammer expected "'100% commitment' from Plaintiff without pay" for the six months preceding his enrollment. *Id.* at ¶ 44. She is alleged to have publicly ridiculed and insulted Plaintiff during his first few weeks in the program. *Id.* at ¶¶ 48, 50. After Plaintiff discovered coding errors in the SERVe data, Plaintiff alleges that Defendant "scapegoated" him and Defendant Bodner, her co-investigator. *Id.* at ¶¶ 112–15.

Plaintiff also had trouble with other professors at PSU. Defendant Fritz, one of Plaintiff's professors at PSU during his first year, is alleged to have harassed Plaintiff about his presence in the graduate program and assigned Plaintiff extra work. *Id.* at ¶¶ 52–58. Plaintiff also alleges that other individuals in the department—including Defendants Skinner and Bodner—"persisted in treating Plaintiff differently, adversely, and recklessly compared to similarly situated graduate students." *Id.* at ¶ 156. For example, Plaintiff alleges that no other graduate student was threatened with expulsion or reprimanded for taking on outside paid employment in violation of department policy. *Id.* at ¶¶ 78, 131–35. In addition, despite having been approved for up to 20 hours per week of work on the SERVe project during the summer of 2014, Defendant

Brockwood—a SERVe project manager—failed to assign Plaintiff sufficient work, causing Plaintiff and his family severe economic and psychological strain. *Id.* at ¶¶ 69–71.

Due to continuing problems with faculty, Plaintiff scheduled a meeting with Defendant Skinner in her capacity as chair of the department in the spring of 2015. *Id.* at ¶ 94. Plaintiff expressed his concerns about the behavior of Defendants Fritz and Hammer, to which Defendant Skinner replied that she was "powerless to do anything further than recommend Plaintiff switch advisors after defending his thesis." *Id.* at ¶¶ 95, 102.

In November of 2016, Defendant Hammer informed Plaintiff that she would be resigning as Plaintiff's advisor after he defended his thesis. *Id.* at ¶ 136. She also told Plaintiff that he could identify his own advisor and was "qualified to continue on in the Program as a PhD I/O candidate." *Id.* at ¶ 137.

On April 5, 2017—after the successful defense of his thesis in February—Plaintiff met with Defendant Bodner about his options for obtaining a new advisor. *Id.* at ¶ 141. At his meeting, they discussed Plaintiff's solid base of knowledge and other abilities, and Defendant Bodner reassured Plaintiff that he should approach Defendant Yang, another PSU professor, about possibly supervising him through comprehensive exams. *Id.* at ¶ 147. Plaintiff reached out to Defendant Yang, and Defendant Yang agreed to meet to discuss it further. *Id.* at ¶ 146.

A day after his meeting with Defendant Bodner, Plaintiff received an email from Defendant Hammer informing him that "the only reason he could not continue in the I/O doctoral area of study . . . was because everyone who wanted a 'new student' took on a 'new student' from the 'new student applicant pool' of younger and less qualified applicants." *Id.* at ¶ 151. Defendant Hammer also indicated in this email that she knew Plaintiff was planning on meeting with Defendant Yang and that this meeting would "not be necessary." *Id.* at ¶¶ 152, 154.

His delayed post-master's review—which had been endorsed by Professors Kaufman and Steele—indicated that Plaintiff had been "dismissed from I/O area." *Id.* at ¶¶ 142, 164. Based on this recommendation, Defendants Bodner and Skinner allegedly concluded that Plaintiff's thesis committee had "recommended Plaintiff's dismissal from the entire Applied Psychology program." *Id.* at ¶ 165. Plaintiff, however, had been told by Professors Kaufman and Steele that "they believed there was still a place as a doctoral student for Plaintiff within the Program." *Id.* at ¶ 164.

On the recommendation of Professor Steele, Plaintiff told Defendant Skinner that he believed that he had endured "years of unrelenting harassment and unfair treatment from Hammer and Fritz." *Id.* at ¶¶ 167–68. Defendant Skinner allegedly responded by telling Plaintiff and he had "'[n]ever admitted to (his) mistakes'" and "had a poor attitude." *Id.* at ¶ 169. Defendant Skinner ended the meeting by telling Plaintiff "she 'didn't know how to conduct an investigation into fairness' and that it was 'a shame' that someone with as much promise as the Plaintiff would have to leave the Program." *Id.* at ¶ 173.

In late May, Plaintiff met Defendant Everett, the Dean of the Office of Graduate Studies, to discuss his post-master's review. *Id.* at ¶ 178. Plaintiff was given an opportunity to interview with faculty at the Business School and Applied Psychology Program who might supervise Plaintiff during the remainder of his doctoral studies. *Id*. Plaintiff also sought to meet with Drs. Martinez and Dimoff, both professors at PSU, about supervising Plaintiff. *Id.* at ¶¶ 180–82. Dr. Dimoff declined to supervise Plaintiff, and Dr. Martinez declined to meet with him. *Id.*

On May 31, Plaintiff's committee voted on a second post-master's review. *Id.* at ¶ 179. Defendant Hammer endorsed Plaintiff's full dismissal from the Applied Psychology Program, but Professors Steele and Kaufman abstained from voting. *Id.* at ¶ 179. On July 17, Defendant

Bodner informed Plaintiff by email that faculty had met 11 days prior to vote to recommend Plaintiff's dismissal from the Applied Psychology Program. *Id.* at ¶ 183. But Plaintiff alleges that not all faculty were available to vote that day. *Id.* at ¶ 184. Months later, Plaintiff repeatedly requested from Defendant Everett a final determination on the Applied Psychology Program's recommendation to dismiss Plaintiff without cause from but never received one. *Id.* at ¶ 188.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n, Inc. v. City & Cnty. of S.F.*, 277 F.3d 1114, 1120 (9th Cir. 2002). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In other words, a complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

However, the court need not accept conclusory allegations as truthful. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint, and we do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations.") (internal quotation marks, citation, and alterations omitted). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

## DISCUSSION

Except with regard to the § 1983 claims against Defendants Hammer, Bodner, and Skinner, Defendants move to dismiss all of the claims against them. Plaintiff stipulates to dismissal of Defendants Martinez and Dimoff and to the dismissal of: (1) the § 1983 claim against Defendant Brockwood; (2) the Title IX and Age Discrimination Act claims against all Defendants except Defendant Hammer; (3) the Rehabilitation Act claim against all Defendants; and (4) the breach of contract claim against Defendants Fritz, Bodner, and Yang. Plaintiff also makes no argument as to the plausibility of a breach of contract claim against Defendant Everett.

Defendants challenge the remainder of the claims on two grounds. First, Defendants argue that Plaintiff cannot bring a claim against individuals under Title IX, the Age Discrimination Act, or ORS 659.852. Second, Defendants argue that Plaintiff has failed to state a claim for relief for a violation of his due process rights under § 1983 against Defendants Everett, Fritz, and Yang, and for breach of contract against Defendants Everett, Hammer, Skinner, and Brockwood. As to both arguments, this Court agrees with Defendants.

### I. Claim 1: Violation of the Fourteenth Amendment under § 1983

Defendants move to dismiss Plaintiff's § 1983 claim, arguing that Plaintiff has failed to allege that Defendants Everett, Yang, and Fritz deprived him of a constitutionally protected interest.[2] Def. Mot. Dismiss ("Def. Mot.") 6, ECF 17. Plaintiff responds by pointing to specific

---

[2] In their Motion, Defendants do not challenge the § 1983 claim as it applies to Defendants Bodner, Hammer, or Skinner. Def. Mot. at 5–6.

8- OPINION & ORDER

allegations in the First Amended Complaint demonstrating the personal involvement of Defendants Everett, Yang, and Fritz in the deprivation of Plaintiff's due process rights. For example, Plaintiff argues that Defendant Everett was "deliberately indifferent to Plaintiff's rights" because Plaintiff reported his concerns about harassment and Defendant Everett failed to act. Pl. Resp. Def. Mot. Dismiss ("Pl. Resp.") 3 (citing FAC ¶¶ 94–97, 99–102, 105, 178), ECF 22. He is also alleged to have failed to respond to Plaintiff's email requests for information related to Plaintiff's dismissal. *Id.* (citing FAC ¶¶ 188–89).

Plaintiff argues that Defendant Yang took actions that ultimately lead to Defendant Hammer "actively working to deprive Plaintiff of his right to his position with Portland State University and his right to complete his degree program." *Id.* at 4–5. Specifically, Plaintiff alleges that he did not inform Defendant Hammer of his meeting with Defendant Yang to discuss whether she would serve as his advisor through comprehensive exams because he was concerned Defendant Hammer could not impartially evaluate him. *Id.* (citing FAC ¶¶ 148, 153). However, Defendant Hammer became aware of the meeting and informed Plaintiff that the meeting would "not be necessary." FAC ¶ 154. Because only Defendant Yang and Defendant Bodner knew about the meeting, Plaintiff alleges that the Court can reasonably infer Defendant Yang told Defendant Hammer. He argues that if she had not done so, "it is possible that Plaintiff could have continued his studies and kept his rights." Pl. Resp. 5.

Similarly, Plaintiff contends that Defendant Fritz undermined Plaintiff's work, which eventually lead to the loss of his advisor and an inability to complete his work. Plaintiff alleges that, among other things, Defendant Fritz nitpicked his work and undermined his research with Defendant Hammer by pointing out a conceptual flaw in his thesis. *Id.* at 6 (citing FAC ¶¶ 62–63); *see also* FAC ¶¶ 103–04. As a result, Plaintiff wasted a year of work and had a more

difficult time securing an advisor later. Pl. Resp. 6. Plaintiff also broadly alleges that Defendant Fritz selectively ignored policy and protocols "around documentation of procedural justice, administrative transparency, and appropriation of University research funds" when interacting with Plaintiff, thus depriving him of his due process right to the fair implementation of policy. *Id.* (citing FAC ¶ 187).

The Court fails to see, however, how these allegations give rise to an inference that Defendants Yang, Everett, and Fritz were personally involved in the deprivation of Plaintiff's due process rights as presently alleged in the operative complaint.[3] In his § 1983 claim, Plaintiff alleges that he "has a constitutionally-protected interest in his pursuit of an education" and "in his continued enrollment in the Program." FAC ¶¶ 194–95. Plaintiff further alleges that he was entitled to due process, including notice and a hearing, before dismissal from the Program, *id.* at ¶¶ 196–97, and was deprived of his constitutionally-protected interest without due process when he was dismissed from the program without notice or a hearing by Defendants Hammer, Skinner, and Bodner, *id.* ¶¶ 199–201. None of the cited allegations regarding Defendants Everett, Yang, or Fritz suggest that they were involved in this violation of Plaintiff's procedural due process rights. Accordingly, the Court dismisses this claim against Defendants Everett, Yang, and Fritz.

///

///

---

[3] This Opinion should be read narrowly as holding only that Plaintiff has not alleged Defendants Yang, Everett, and Fritz were personally involved in the deprivation of Plaintiff's constitutional rights as currently plead in Plaintiff's First Claim for Relief. In the briefing on the motion presently before the Court, Plaintiff offered only one legal citation to suggest that these allegations could give rise to a constitutional violation. In addition, Defendants did not challenge the merits of Plaintiff's claims until their Reply. *See, e.g., Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 672 F.3d 1160, 1166 n.8 (9th Cir. 2012) ("[A]rguments raised for the first time in a reply brief are waived."). Accordingly, without further briefing on these issues, the Court declines to further address whether Plaintiff could allege that these Defendants deprived Plaintiff of a constitutional right.

## II. Claim 2: Title IX

Defendants move to dismiss Plaintiff's Title IX claim on the ground that individuals are not subject to liability under Title IX. Def. Mot. 6–7. Plaintiff agrees to dismiss this claim against Defendants Everett, Fritz, Skinner, Bodner, Brockwood, and Yang, but opposes dismissal of this claim against Defendant Hammer. Pl. Resp. 7.

Title IX provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). The statute goes on to except certain classes of educational institutions, programs, and activities. *Id.* Educational institution is defined as "any public or private . . . institution of vocational, professional, or higher education, except that in the case of an educational institution composed of more than one school, college, or department which are administratively separate units, such term means each such school, college, or department." *Id.* at § 1681(c).

Although the Ninth Circuit has not yet addressed this issue, courts—in this circuit and elsewhere—have consistently determined that Title IX claims cannot be maintained against school officials in their individual capacities. *See GC ex. rel. Counts v. N. Clackamas Sch. Dist.*, 654 F.Supp.2d 1226, 1236–37 (D. Or. 2009) (citing cases). Instead, only recipients of Federal funding may be liable under Title IX. *Id.* at 1236–37 (quoting *Davis v. Monroe Cty. Bd. Of Educ.*, 526 U.S. 629, 640–41 (1999) ("[T]he government's enforcement power may only be exercised against the funding recipient . . . and we have not extended damages liability under Title IX to parties outside the power.")). The regulations support this conclusion, as they provide that "no person shall, on the basis of sex, be . . . subjected to discrimination under any . . . education program or activity operated by a recipient which receives Federal financial

assistance." 34 C.F.R. § 106.31. However, they also suggest that a recipient of Federal funding could be an individual: "Recipient means . . . any person, to whom Federal financial assistance is extended directly or through another recipient and which operates an education program or activity which receives such assistance[.]" *Id.* at § 106.2. In other words, though "Title IX does not subject school officials to liability in their individual capacities," *GC*, 654 F.Supp.2d at 1237, it may be possible that an individual recipient of Federal funding operating an education program or activity receiving such assistance could be liable under Title IX.

Under the facts currently alleged, however, Defendant Hammer cannot be held liable in her individual capacity. Plaintiff argues that these claims may be proper as to Defendant Hammer because she is "effectively her lab," which may be an administratively separate unit of PSU subject to Title IX. Pl. Resp. 7. But the complaint is devoid of any allegation plausibly suggesting that the lab is a "school, college, or department" that is an administratively separate unit. Further, even assuming that the lab could be an administratively separate unit subject to Title IX, Plaintiff has cited no authority to suggest that Defendant Hammer's role directing her lab should make her liable in her individual capacity. Just as school officials are not subject to individual liability, Defendant Hammer cannot be held individually liable solely because of her position in her lab.

In addition, Plaintiff does not allege that Defendant Hammer is the recipient of Federal funding. Plaintiff only alleges that Defendant Hammer "secure[d] a $5 million [Department of Defense]-funded grant." FAC ¶ 25. Later in the operative complaint, Plaintiff alleges that the funding used for Plaintiff's SERVe research assistant position was "University earmarked federal funding," *id.* at ¶ 86, and the specific allegations contained within Plaintiff's Title IX claim merely note that "PSU is a recipient of federal financial assistance," *id.* at ¶ 205. In light of

the allegations in the complaint and the caselaw suggesting that school officials are not generally liable in their individual capacities, the Court finds that the Title IX claim against Defendant Hammer must be dismissed.

### III.   Claim 6: Age Discrimination Act

Like Plaintiff's Title IX claim, the parties only dispute whether the claim is proper as brought against Defendant Hammer. Again, Defendants argue that claims under the Age Discrimination Act are cognizable against funding recipients only, and Plaintiff responds that Defendant Hammer may be liable if her lab is an administratively separate entity.

The Age Discrimination Act of 1975 provides "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102. Section 6104 allows interested persons to "bring[] an action in any United States district court for the district in which the defendant is found or transacts business to enjoin a violation of [the Age Discrimination Act] by any program or activity receiving Federal financial assistance."[4] *Id.* at § 6104(e). Based on the language of the statute, at least one other district court in this circuit has held that only programs or activities receiving Federal assistance—not individuals— can be held liable for violations of the Age Discrimination Act. *See Steshenko v. Gayrard*, 44 F.Supp.3d 941, 952 (N.D. Cal. 2014) ("[A] review of the relevant provisions of the ADA demonstrates that Plaintiff cannot maintain an ADA claim against [the individual defendants]."). "Program or activity" is defined broadly and encompasses colleges, universities, public systems of higher education, and a limited group of corporations, partnerships, and sole proprietorships. 42 U.S.C. § 6107(4)(B)(i).

---

[4] This language has also been interpreted as authorizing only suits for injunctive relief and attorney's fees and not for recovery of monetary damages. *See Steshenko v. Gayrard*, 44 F.Supp.3d 941, 951 (N.D. Cal. 2014).

13- OPINION & ORDER

As with Plaintiff's Title IX claim, Plaintiff has failed to state a claim for a violation of the Age Discrimination Act against Defendant Hammer. First, Defendant Hammer is not a "program or activity" within the meaning of the statute. Second, Plaintiff does not allege that Defendant Hammer receives Federal assistance. *See Steshenko*, 44 F.Supp.3d at 952 ("Because school employees are not included in [the definition of program of activity], and because school employees do not 'receive federal financial assistance,' [the individual defendants] are not proper defendants under the ADA."). Accordingly, this claim as brought against Defendant Hammer must also be dismissed.

## IV. Claim 3: Retaliation under ORS 659.852

The parties also dispute whether individuals can be liable under ORS 659.852. ORS 659.852(2) provides: "A student of an education program may not be subjected to retaliation by an education program for the reason that the student has in good faith reported information that the student believes is evidence of a violation of a state or federal law, rule or regulation." It defines an "education program" as, among other things, "an education program provided by . . . a public university listed in ORS 352.002," which includes Defendant Portland State University. ORS 659.852(1)(a)(H). Under the plain language of the statute, Defendants argue that individuals are not subject to liability under ORS 659.852. Plaintiff responds that Defendants Bodner, Skinner, Fritz, and Hammer may all be cognizable Defendants under ORS 659.852 because these individuals "ran" education programs at PSU.

There is no Oregon case either interpreting or applying this statute. In the absence of clear precedent, the Court turns to the three-part statutory interpretation framework laid out in by the Oregon Supreme Court in *State v. Gaines* to determine the intent of the legislature in drafting ORS 659.852. 346 Or. 160, 165 (2009); ORS § 174.020. First, the Court examines the text and

14- OPINION & ORDER

the context of the statute. *Gaines*, 346 Or. at 171 (2009) (citing *PGE v. Bureau of Labor and Indus.*, 317 Or. 606, 610–11 (1993)). In construing the text and context, the Court neither "insert[s] what has been omitted" nor "omit[s] what has been inserted." ORS 174.010. Next, the parties are "free to proffer legislative history to the court, and the court will consult it after examining the text and context, even if the court does not perceive an ambiguity in the statute's text, where that legislative history appears useful to the court's analysis."[5] *Id.* at 172. Finally, "[i]f the legislature's intent remains unclear after examining text, context, and legislative history, the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Id.*

Here, both the text and context indicate that only educational programs are subject to liability under the statute. The legislature only prohibited retaliation "by an educational program." Absent from the statute is any indication that the legislature intended to create individual liability. The legislature could have prohibited retaliation by a person or an employee of the educational program, but it chose not to. *Cf. McLaughlin v. Wilson*, 292 Or. App. 101, 106–07, 423 P.3d 133, 136, *review allowed*, 363 Or. 744, 430 P.3d 561 (2018) (In the context of ORS 659A.030 and the anti-retaliation provision of Oregon's Fair Employment Practices Act, the Oregon Court of Appeals found that the legislature's clear choice of language—prohibiting retaliation by different entities in different subparagraphs of the statute—indicated that the legislature carefully chose what type of entity was subject to liability.). Given this clear indication from the legislature that the law only subjects educational programs to liability, the fact that Defendants Bodner, Skinner, Fritz, and Hammer may have had leadership roles in an education program does make them liable to Plaintiff in their individual capacities. Accordingly,

---

[5] Neither party has provided the Court with any legislative history.

15- OPINION & ORDER

the Court finds that under the plain language of the statute, Defendants Bodner, Skinner, Fritz, and Hammer cannot be held individually liable.

## V.     Claim 5: Breach of Contract

To establish a breach of contract claim under Oregon law, the plaintiff "must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff." *Slover v. Or. St. Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570–71, 927 P.2d 1098, 1101 (1996). Defendants move to dismiss Plaintiff's breach of contract claims against Defendants on the ground that Plaintiff has failed to allege that Defendants had any contract with Plaintiff. Def. Mot. 10. Plaintiff responds by pointing to specific allegations in the complaint which he argues demonstrate the existence of a contract between himself and Defendants Hammer, Skinner, and Brockwood. Pl. Resp. 10–11. In the context of the overall complaint, however, the Court finds that these allegations do not plausibly state a claim for breach of contract against these Defendants.

The general allegations in the complaint suggest that Plaintiff's breach of contract claim concerns only Portland State University, a co-defendant who has already filed an answer in this case. Under the section describing his fifth cause of action for breach of contract, Plaintiff defines "the Contract" as follows: "PSU's offering of a position in the PhD program to Plaintiff in exchange for paying tuition, together with Plaintiff's acceptance of that offer, created a binding contract for educational services between Plaintiff and PSU the defendants." FAC ¶ 222. Plaintiff alleges that the Contract terms required PSU to provide certain opportunities to Plaintiff, abide by its own regulations, and included the implied duty of good faith and fair dealing. *Id.* at ¶¶ 223–24. Plaintiff alleges that the actions of Hammer, Skinner, Bodner, DOEs 1 through 25, and the PSU Defendants resulted in breach of the Contract. *Id.* at ¶¶ 225–31.

The other allegations in the complaint also do not plausibly state a claim for breach of contract against the other Defendants. Regarding the purported contract with Defendant Hammer during his graduate studies, Plaintiff cites paragraph 29 of the operative complaint:

> Plaintiff joined Dr. Hammer's lab in mid-September 2013, about two weeks before the start of Plaintiff's 1st year of graduate classes, as a contractually funded graduate research assistant . . . and "PhD Only" student assigned to the SERVe grant with the Program promising "at least four years of tuition remission-based funding contingent on satisfactory progress and the availability of funding."

But this allegation does not plausibly allege a contract between Plaintiff and Defendant Hammer. If anything, it suggests that Plaintiff had a contract with the Applied Psychology Program, which is alleged to have promised Plaintiff funding as a graduate research assistant assigned to Defendant Hammer's SERVe project.

Plaintiff also alleges that he had a contract with Defendant Skinner because "she was the one that offered Plaintiff a place in the program, in exchange for his help with Defendant Hammer's research." Pl. Resp. 10 (citing FAC ¶ 27). The relevant paragraph of the complaint is as follows: "Dr. Skinner, in her role as chair of the Department of Psychology at PSU, officially notified Plaintiff on or about April 9, 2013, that he had been accepted into the Program and would be advised by Hammer and concentrating his studies in I/O Psychology." FAC ¶ 27. Again, this paragraph does not suggest that Plaintiff had a contract with Defendant Skinner. At best, it suggests that Plaintiff received an offer from the Department of Psychology to enroll in its graduate program.

Finally, Plaintiff argues that he had a contract with Defendant Brockwood because she "agreed to ensure that Plaintiff received adequate hours over the summer of 2014." *Id.* at 10 (citing FAC ¶ 69). But in the complaint, Plaintiff alleges: "During this time, as Hammer was preparing to leave on an extended vacation to Israel, Hammer instructed SERVe project manager

Dr. Krista Brockwood to assign Plaintiff sufficient work for the duration of the summer of 2014." FAC ¶ 69. Even viewing this allegation in the light most favorable to Plaintiff, Defendant Hammer's instruction to Defendant Brockwood to provide Plaintiff with work for the summer does not plausibly establish a contract between Defendant Brockwood and Plaintiff. Accordingly, the Court dismisses the breach of contract claims against Defendants.

## VI. Leave to Amend

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The district court has discretion whether to allow amendment. *Tracht Gut, LLC v. L.A. Cnty. Treasurer & Tax Collector (In re Tracht Gut, LLC)*, 836 F.3d 1146, 1151 (9th Cir. 2016) ("'[T]he grant or denial of an opportunity to amend is within the discretion of the District Court.'") (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Though futility can, by itself, justify denial of a motion for leave to amend, *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 (9th Cir. 2014), the Court cannot say that amendment in this case would be futile as to Plaintiff's claims for breach of contract and violations of § 1983, Title IX, and the Age Discrimination Act. Accordingly, the Court grants Plaintiff leave to amend his complaint to cure the deficiencies identified above as to Plaintiff's First, Second, Fifth, and Sixth Claims for Relief.

///
///
///
///
///
///

**CONCLUSION**

Defendants' Motion to Dismiss [17] is GRANTED. Per the stipulation of the parties, Defendants Dimoff and Martinez are dismissed from this case. In addition, the Court dismisses all claims against Defendants Brockwood, Everett, Fritz, and Yang, and Plaintiff's Second, Third, Fourth, Fifth, and Sixth claims against Defendants Hammer, Skinner, and Bodner. Plaintiff shall file an amended complaint within 14 days of this Opinion & Order curing the deficiencies identified above.

IT IS SO ORDERED.

Dated this \_\_\_1\_\_\_ day of \_\_\_April\_\_\_, 2019.

*Marco Hernández*
MARCO A. HERNÁNDEZ
United States District Judge