IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


GILBERT BRADY,

        Plaintiff,

    v.

PORTLAND STATE UNIVERSITY,
LESLIE B. HAMMER, ELLEN SKINNER,
TODD BODNER, and DOES 1 THROUGH 25,

        Defendants.

No. 3:18-cv-01251-HZ

OPINION & ORDER

David H. Griggs
Cameron Ramelli
GRIGGS LAW GROUP, P.C.
4900 SW Griffith Drive, Suite 165
Beaverton, Oregon, 97005

    Attorneys for Plaintiff

P.K. Runkles-Pearson
Taylor D. Richman
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204

    Attorneys for Defendants

1- OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Gilbert Brady filed this action against Defendants Portland State University, Leslie B. Hammer, Ellen Skinner, Todd Bodner, and DOES 1 through 25.[1] Plaintiff brings claims under 42 U.S.C. § 1983 for violation of the Due Process Clause of the Fourteenth Amendment; Title IX, 20 U.S.C. §§ 1681–1688; Or. Rev. Stat. ("ORS") § 659.852; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et. seq.; the Age Discrimination Act of 1975, 42 U.S.C. § 6101 et. seq.; and for breach of contract. Defendants now move to dismiss Plaintiff's § 1983 claim under Fed. R. Civ. P. 12(b)(6).[2] The Court grants Defendants' motion.

## BACKGROUND

Plaintiff began working for Defendant Hammer, a professor at Portland State University ("PSU"), as a post-baccalaureate research assistant in 2011. Second Am. Compl. ("SAC") ¶ 10. Plaintiff helped Defendant Hammer write a grant application focusing on veteran reintegration into work and family life after 9/11. *Id.* at ¶ 12. In 2013, Plaintiff alleges that he and Defendant Hammer "developed a mutual interest in Plaintiff applying to the [PSU Applied Psychology Program] ("the Program") and continuing in [Defendant] Hammer's lab as a doctoral student in I/O Psychology." *Id.* at ¶ 14.

When Plaintiff was accepted into the Program in 2013, he indicated Defendant Hammer as his first choice for an advisor. *Id*. at ¶ 18. Plaintiff registered for classes and began working for Defendant Hammer in mid-September as a "contractually funded graduate research

---

[1] Plaintiff previously brought claims against Defendants Margaret Everett, Charlotte Fritz, Krista Brockwood, Liu-Qin Yang, Larry Martinez, and Jennifer Dimoff. First. Am. Compl., EFC 3. These claims were dismissed by the Court on April 1, 2019. Op. & Order, EFC 28.
[2] Defendant Portland State University filed an Answer on April 29, 2019, and does not join in the motion to dismiss. Accordingly, "Defendants" as used throughout this Opinion does not include Defendant Portland State University.

2- OPINION & ORDER

assistant." *Id.* at ¶¶ 22-23. Plaintiff was assigned to the SERVe grant and alleges he was promised "at least four years of tuition remission-based funding contingent on satisfactory progress and the availability of funding." *Id.* at ¶ 23. However, three days before classes began, Defendant Hammer demoted Plaintiff to a teaching assistant. *Id.* at ¶ 44. Plaintiff was reassigned as a SERVe technician in August 2014 but was again demoted to a teaching assistant before fall classes began. *Id.* at ¶¶ 68-69.

Despite receiving positive academic reviews, Plaintiff alleges ongoing difficulties working for Defendant Hammer. For example, Plaintiff alleges Defendant Hammer "became publically [sic] belittling and humiliating" during the beginning of Plaintiff's first year. *Id.* at ¶ 42. Plaintiff also alleges that, after demoting him to a teaching assistant, Defendant Hammer "continued to exploit Plaintiff's labor for free." *Id.* at ¶¶ 74-79. Plaintiff scheduled a meeting to discuss these difficulties with the acting chair of the department, Defendant Skinner, in April 2015. *Id.* at ¶ 87. According to Plaintiff, Defendant Skinner stated that she "was powerless to do anything further." *Id.* at ¶ 95.

In November 2016, Plaintiff received a "good" performance review, but the review included a formal notice of Defendant Hammer's intent to resign as Plaintiff's advisor after he defended his thesis. *Id.* at ¶ 129. Despite this, Defendant Hammer informed Plaintiff that he "was qualified to continue on in the Program as a PhD I/O candidate." *Id.* at ¶ 130. Plaintiff successfully defended his thesis on February 21, 2017. *Id.* at ¶ 133.

Two months later, Plaintiff met with Defendant Bodner to discuss securing another advisor and ultimately contacted Professor Yang about supervising him through his comprehensive exams. *Id.* at ¶¶ 134-139. Though Plaintiff never informed Defendant Hammer of his plan to meet with Professor Yang, Defendant Hammer sent Plaintiff an email—on which

Defendant Bodner and Defendant Skinner were copied—indicating she had become aware of the planned meeting and that the meeting "[would] not be necessary." *Id.* at ¶¶ 145-147.

On April 21, 2017, Defendant Bodner provided Plaintiff with his delayed post-master review which was endorsed by two other committee members—Professor Kaufman and Professor Steele. *Id.* at ¶¶ 156-157. The review notified Plaintiff of his dismissal from the I/O area of the Program. *Id.* at ¶ 157. Though Kaufman and Steele told Plaintiff that by endorsing the dismissal the two "believed there was still a place as a doctoral student for Plaintiff in the Program," Defendants Bodner and Skinner determined that the committee had "recommended Plaintiff's dismissal from the entire Program." *Id.* at ¶¶ 157-158. Around this time, Plaintiff complained to Defendant Skinner "about Plaintiff enduring years of unrelenting harassment and unfair treatment from [Defendant] Hammer and [Professor] Fritz." *Id.* at ¶ 161. In response to this complaint, Defendant Skinner said that Plaintiff "'[n]ever admitted to (his) mistakes, and had a poor attitude.'" *Id.* at ¶ 162. Defendant Skinner also informed Plaintiff that "she 'didn't know how to conduct an investigation into fairness.'" *Id.* at ¶ 166.

On May 31, 2017, Plaintiff's review committee voted on Plaintiff's second post-master review form. *Id.* at ¶ 172. Defendant Hammer endorsed Plaintiff's full dismissal from the Program while Professors Steele and Kauffman abstained from voting. *Id.* Defendant Bodner then emailed Plaintiff on July 17, 2017, to inform him that the faculty had met the previous month and voted to recommend Plaintiff's dismissal from the Program. *Id.* at ¶ 176. However, Plaintiff alleges that not all faculty were present when the voting occurred. *Id.* at ¶ 177. In October 2017, Plaintiff repeatedly requested a final determination on the recommended dismissal but never received one. *Id.* at ¶ 181.

# STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n, Inc. v. City & Cnty. of S.F.,* 277 F.3d 1114, 1120 (9th Cir. 2002). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

However, the court need not accept conclusory allegations as truthful. *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003). ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint, and we do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations") (internal quotation marks, citation, and alterations omitted). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

## DISCUSSION

Defendants move to dismiss Plaintiff's claim under 42 U.S.C. § 1983, arguing that the claim is barred by qualified immunity. Defendants contend that Plaintiff cannot allege they deprived him of a clearly established constitutional right as required under § 1983. Def. Mot. Dismiss ("Def. Mot.") 2, ECF 30. This Court agrees with Defendants.

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

"To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner,* 451 F.3d 1063, 1067 (9th Cir. 2006) (citing *West v. Atkins,* 487 U.S. 42, 48 (1988)).

Government officials performing discretionary functions receive qualified immunity from civil liability for damages so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action." *Anderson v. Creighton,* 483 U.S. 635, 639 (1987) (citing *Harlow* 457 U.S. at 819)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640. Thus, in order to defeat an assertion of qualified immunity, a plaintiff must demonstrate that the public official's conduct

was "unreasonable in light of clearly established law." *Elder v. Holloway,* 510 U.S. 510, 512 (1994).

Plaintiff brings his claim under § 1983 for deprivation of a constitutionally protected interest in his education. SAC ¶¶ 185-196; Pl. Resp. Def. Mot. ("Pl. Resp.") 1, ECF 32. Specifically, Plaintiff appears to allege both a constitutionally protected liberty interest in the pursuit of his education and a property interest in his continued enrollment in the Program.[3] SAC ¶¶ 187-188. Plaintiff maintains he was therefore entitled to due process prior to deprivation of these interests and that Defendants violated his right to due process by dismissing him from the Program without notice and a hearing. *Id.* Thus, the crux of the issue here is whether Plaintiff in this case had a clearly established constitutionally protected interest in his graduate education such that he was entitled to notice and a hearing before his dismissal from the Program.

The Due Process Clause of the Fourteenth Amendment "forbids the State to deprive any person of life, liberty or property without due process of law." *Goss v. Lopez*, 419 U.S. 565, 572 (1975). To succeed on a procedural due process claim, "the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Shanks v. Dressel,* 540 F.3d 1082, 1090 (9th Cir. 2008) (quoting *Portman v. Cty of Santa Clara,* 995 F.2d 898, 904 (9th Cir. 1993)). Liberty interests include, among other things, "those privileges long recognized … as essential to the orderly pursuit of happiness by free men." *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 572 (1972) (internal quotation marks and citation omitted). Property interests, on the other hand, "are created and their dimensions are defined by existing rules or understandings that stem from

---

[3] Plaintiff does not cite a specific constitutional amendment in support of his Due Process claim. However, because Defendants are state actors, the Court assumes Plaintiff brings his § 1983 claims under the Fourteenth Amendment.

7- OPINION & ORDER

an independent source such as state law." *Id.* at 577. "[F]ederal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas, & Water Div. v. Craft,* 436 U.S. 1, 9 (1978) (quoting *Roth,* 408 U.S. at 577).

Plaintiff first alleges he has an "interest in his pursuit of his education." SAC ¶ 186. Plaintiff, however, has not provided this Court with any binding caselaw to support his allegation that he has a constitutionally protected liberty interest in the pursuit of his education, and the Court finds none. Indeed, the Supreme Court declined to decide whether a similar interest exists, *see Bd. of Curators, Univ. of Missouri. v. Horowitz,* 435 U.S. 78, 84-85 (1978) (assuming without deciding that a medical student dismissed in her final year of study had an interest in pursuing her medical career), and has held that education is not a right afforded explicit or implicit protection under the Federal Constitution, *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 33-35 (1973).

Plaintiff also alleges he has a "property interest in his continued enrollment in the Program." SAC ¶ 188. As discussed earlier, property interests protected by the Fourteenth Amendment "are not created by the Constitution" and instead "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth,* 408 U.S. at 577. In 1914, the Oregon Supreme Court acknowledged that payment of tuition may form a contract for educational services between a student and the school. *Tate v. N. Pac. Coll.,* 70 Or. 160, 165, 140 P. 743, 744 (1914). Thus, state law may create the alleged property interest in this case. *See Doe v. Univ. of Oregon,* No. 6:17-CV-01103-AA, 2018 WL 1474531, at *11 (D. Or. Mar. 26, 2018) ("Plaintiff's payment of

tuition and fees to the University of Oregon, therefore, created a property interest in continued enrollment throughout the period for which he had paid tuition."); *see also Dauven v. George Fox Univ.,* No. CV 09-305-PK, 2010 WL 6089077, at * 16 (D. Or. Dec. 3, 2010) ("Oregon law recognizes that a student and a private university may have a contractual relationship based on the terms contained in publications that the university provides to the student.").

But the inquiry does not end there. The Court must also determine whether, under federal law, "that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light,* 436 U.S. at 9 (quoting *Roth*, 408 U.S. at 577). In *Brown v. Board of Education,* the Supreme Court acknowledged "education is perhaps the most important function of state and local governments." 347 U.S. 483, 493 (1954); *see also Rodriguez,* 411 U.S. at 18, 30 (In discussing "the undeniable importance of education," the Court highlighted its many holdings "expressing an abiding respect for the vital role of education in a free society."). In *Stretten v. Wadsworth Veterans Hospital,* the Ninth Circuit found that a physician's claim to his residency at a federal medical facility constituted a property interest such that he was entitled to due process prior to removal from that program. 537 F.2d 361, 367 (9th Cir. 1976). In addition, other circuits have found property interests in higher education "'sufficiently important to warrant protection'" where state law has provided an anchor for that right. *Doe,* 2018 WL 1474531 at *11 (quoting *Barnes v. Zaccari,* 669 F.3d 1295, 1305 (11th Cir. 2012) (where the student had a legitimate entitlement to continued enrollment in a state university under Georgia law, the circuit court found it sufficiently important to warrant protection under the Due Process clause)); *see also Harris v. Blake*, 798 F.2d 419, 422 (10th Cir. 1986) (holding that an entitlement to public education was created through a statute passed by the Colorado Legislature); *Gorman v. Univ. of Rhode Island,* 837 F.2d 7, 12 (1st Cir. 1988) ("[A] student's

interest in pursuing an education is included within the fourteenth amendment's protection of liberty and property."). In sum, Plaintiff's contractual property interest in continued enrollment in the Program may give rise to a legitimate entitlement protected by the Due Process Clause.

Nevertheless, the Court finds that any right to due process protection for this asserted property interest was not clearly established at the time of the underlying facts of this case. First, while federal courts have recognized the importance of education, there is no binding precedent or caselaw from this district clearly establishing a constitutionally protected property interest in education. *Chappell v. Mandeville,* 706 F.3d 1052, 1056 (9th Cir. 2013) ("To determine whether the law was clearly established, we first look to our own binding precedent. If none is on point, we may consider other decisional law."). The Supreme Court has never definitively determined whether a property interest in higher education exists. *See e.g. Horowitz,* 435 U.S. 84–85 ("We need not decide, however, whether respondent's dismissal deprived her of a liberty interest in pursuing her medical career. Nor need we decide whether respondent's dismissal infringed any other interest constitutionally protected against deprivation without procedural due process."); *Regents of Univ. of Michigan v. Ewing,* 474 U.S. 214, 223 (1985) (assuming, without deciding, "the existence of a constitutionally protectible property right in [the plaintiff's] continued enrollment" in a public institution of higher education). The Ninth Circuit has also declined to decide whether a clearly established property interest in higher education exists. For example, in an appeal by students who had been dismissed the University of Oregon, the circuit court "assume[d], without deciding, that the student athletes have property and liberty interests in their education, scholarships, and reputation as alleged in the complaint." *Austin v. Univ. of Oregon,* 925 F.3d 1133, 1139 (9th Cir. 2019) (finding that the students "received 'the hallmarks of procedural due process': notice and a meaningful opportunity to be heard."); *see also Oyama v.*

*Univ. of Hawaii*, 813 F.3d 850, 874 (9th Cir. 2015) (Rather than concluding the plaintiff had been deprived of a constitutionally protected property interest, the court "accept[ed] Oyama's argument that the University's decision deprived him of a constitutionally protected interest" and found that "the University provided him with adequate process.").

Second, in recent decisions, at least two other judges in this district have held that no such clearly established property interest exists. In *Austin v. University of Oregon,* the plaintiffs asserted "a right to due process prior to potential deprivation of a property interest in their status as admitted university students in good standing." 205 F. Supp. 3d 1214, 1221 (D. Or. 2016), *aff'd,* 925 F.3d 1133 (9th Cir. 2019). In dismissing the plaintiffs' claims, the court found that "no Supreme Court, Ninth Circuit, or Oregon District Court cases that, at the time of the events giving rise to this case, clearly establishe[d] the property rights [the plaintiffs] assert[ed]." *Id.* Due to a lack of binding precedent, the court held that the plaintiffs' "proposed interests, whether they be characterized as property or liberty interests . . . [had] no parallels 'beyond debate' in relevant precedent." *Id.* at 1221. Similarly, the court in *Ryan v. Harlan* found "no recognized due process interest in graduate level education." No. CV-10-626-ST, 2011 WL 711110, at *7 (D. Or. Feb. 22, 2011). There, the court recognized that there is "an established and significant property interest in universal elementary and high school education due to mandated attendance by state laws," but "post-high school . . . the property interest is less and less protected." *Id.* (citing *Goss,* 419 U.S. at 572-74); *see also Fernandez v. Rosenzwieg,* No. CIV. 95-241-FR, 1996 WL 453046, at *3 (D. Or. Aug. 8, 1996) ("There is no case holding that a student has a federally-protected due process, property or liberty interest in continued enrollment in or graduation from a state university.").

Plaintiff aptly cites to *Doe v. University of Oregon* and *Stretten v. Wadsworth Veterans Hospital* in arguing that he has a constitutionally protected interest in continued enrollment in the Program. Pl. Resp. 2-5. However, neither case changes the Court's analysis. In *Doe*, Judge Aiken held that "payment of tuition and fees to the University of Oregon . . . created a property interest in continued enrollment," and concluded this "'interest rises to the level of a legitimate claim or entitlement protected by the Due Process Clause.'" *Doe,* 2018 WL 1474531, at *11 (quoting *Newman v. Sathyavaglswaran,* 287 F.3d 786, 797 (9th Cir. 2002)). However, the decision in *Doe* was issued after the underlying facts of this case arose, and Judge Aiken ultimately concluded that the defendants were entitled to qualified immunity because "a reasonable official could have . . . believed, in good faith, that plaintiff had no constitutional right to due process[.]" *Id.* at *14 ("In the absence of binding on-point precedent and in the light of the circuit court split and District of Oregon cases described above, I cannot find that the due process right plaintiff asserts here was clearly established.").

Similarly, in *Stretten,* the Ninth Circuit acknowledged that the plaintiff had a right to due process prior to termination from his position as a resident at a federal medical facility. 537 F.2d at 367. In making its determination, however, the circuit court relied on the specific facts of that case, which are distinguishable from the facts of this case. *Id.* Emphasizing the hospital had advised the plaintiff that "he would be *employed* for the 'duration of his training unless sooner terminated,'" the court determined that the plaintiff had a protected property interest in his residency. *Id.* (emphasis added). Therefore, the plaintiff was entitled to due process prior to termination of his employment contract as a resident with the facility. *Id.* Plaintiff's claim, by contrast, focuses not on his employment at PSU but on a property interest in his continued enrollment in an Oregon education program, an issue the court in *Stretten* did not reach. Thus,

*Stretten* fails to clearly establish the alleged constitutionally protected property interest at issue in this case.

In brief, even assuming Plaintiff has a constitutionally protected property interest in his education program, that interest was not clearly established at the time Plaintiff was dismissed from the Program. As no precedential or decisional law has placed the constitutional question beyond debate, Defendants are entitled to qualified immunity, and Plaintiff's claim under 42 U.S.C. § 1983 is dismissed.

## CONCLUSION

The Court GRANTS Defendants' Motion to Dismiss [30]. Plaintiff's claim under 42 U.S.C. § 1983 is dismissed.

IT IS SO ORDERED.

Dated this 23 day of August, 2019.

_____
MARCO A. HERNÁNDEZ
United States District Judge